B177



FILED
MAY 26 2021
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 21-240 |
| v. | ) **(UNDER SEAL)** |
| | ) (18 U.S.C. §§ 1349, 1956(h) |
| JONATHAN A. WESTON | ) and 26 U.S.C. §§ 7203, 7206(1)) |

# INDICTMENT

## COUNT ONE

The grand jury charges:

Beginning in and around October, 2005, and continuing thereafter until in and around January, 2019, in the Western District of Pennsylvania and elsewhere, the defendant, JONATHAN A. WESTON (hereafter WESTON, or defendant), along with an unindicted deceased conspirator known to the Grand Jury as VP, knowingly and willfully did conspire, combine, confederate and agree with each other, to commit an offense against the United States, that is, bank fraud, in violation of Title 18, United States Code, Sections 1344(1) and 1344(2).

### Introduction

1. The defendant, JONATHAN A. WESTON, was employed as an accountant for Hillandale Farms of PA, Inc. (hereafter Hillandale), an entity under the corporate umbrella of the Hillandale Farms Company, until 2005. Hillandale was founded in 1958 by Orland R. Bethel, and is a nationwide supplier of eggs, butter, cheese and meats to retail stores, and maintains a corporate office in Greensburg, Pennsylvania. Upon his departure from Hillandale, WESTON became the owner of Katie's Kandies retail candy stores located in Pittsburgh, including locations at Liberty Center and Fifth Avenue Place, and owned and operated self-service car washes and rental properties throughout the region.

2. WESTON also owned a real estate holding company called Cougar Holdings (hereafter Cougar) through which WESTON managed and operated self-service car washes.

3. Unindicted conspirator VP, at all times material to this Indictment, served as a secretary and bookkeeper for Hillandale in Greensburg, Pennsylvania, and at one time served as the personal secretary to WESTON. In addition to her employment at Hillandale, VP owned a telephone rental and service business called White Oak Teletronics (hereafter White Oak) located in White Oak, Pennsylvania. VP died July 7, 2019.

4. Soon following his departure from Hillandale, as described further in this Indictment, WESTON and VP schemed to defraud Hillandale by embezzling approximately $6.8 million dollars from Hillandale, and in doing so, financially enriched themselves by laundering the stolen funds through their business holdings; and purchasing high-end and collectible vehicles and real estate, and engaged in lavish personal spending.

## MANNER AND MEANS OF THE CONSPIRACY

5. It was a part of the conspiracy that on or about October 26, 2005, shortly following his departure from Hillandale, WESTON created a fictitious business checking account at Northwest Savings Bank styled as "Jonathan A. Weston d/b/a Hill-n-Dale Tree Farm-No Versailles" (hereinafter Hill-n-Dale Tree Farm Account) ending in account number 0176, with a stated business purpose as a "timbering company." Hill-n-Dale was a fictitious company with a registered business address on the account at one of WESTON'S self-service car washes located on McLaughlin Run Road in Upper St. Clair, Pennsylvania. No record of Hill-n-Dale exists within Pennsylvania corporation bureau records. WESTON was the only signatory to the account.

6. It was further a part of the conspiracy that WESTON and VP agreed that, upon receipt of customer checks payable to Hillandale for the purchase of eggs and other products, VP, instead of depositing them in Hillandale's operating account at S&T Bank, intercepted and diverted the checks to WESTON.

2

7. It was further a part of the conspiracy that WESTON, upon receiving the intercepted customer checks from VP, deceived Northwest Savings Bank into believing the Hill-n-Dale Tree Farm account was an authorized depository account for Hillandale by fraudulently and deceptively endorsing the back of the checks with the handwritten instruction "For Deposit Only Hill-n-Dale Farm-No Ver" and then deposited the fraudulently endorsed checks into the Hill-n-Dale Tree Farm account.

8. It was further a part of the conspiracy that VP altered or failed to record transactions in Hillandale accounting records in order to conceal the fraudulent embezzlement scheme from Hillandale.

9. It was further a part of the conspiracy that, in addition to the Hill-n-Dale Tree Farm account, WESTON created bank accounts at Northwest Savings Bank for his other businesses such as Katie's Kandies and Cougar through which accounts WESTON transferred and laundered millions of dollars embezzled from Hillandale.

10. It was further a part of the conspiracy that VP created personal bank accounts at S&T Bank and PNC Bank, into which she accepted millions of dollars in embezzled funds from business accounts controlled by WESTON.

In violation of Title 18, United States Code, Section 1349.

## COUNT TWO

The grand jury further charges:

11. The allegations set forth in paragraphs 1-10 are incorporated herein by reference, as though set forth at length more fully herein.

12. Beginning in and around October 2005, and continuing thereafter until in and around January 2019, in the Western District of Pennsylvania and elsewhere, the defendant, JONATHAN A. WESTON, and VP, did knowingly, intentionally and unlawfully conspire together, to commit certain offenses against the United States, that is to launder proceeds of the specific unlawful activity of bank fraud, in violation of Title 18, United States Code, Sections 1344(1) and 1344(2).

## MANNER AND MEANS OF THE CONSPIRACY

13. It was the object of the money laundering conspiracy that the defendant, JONATHAN A. WESTON, and unindicted conspirator VP, conspired to launder millions of dollars embezzled from Hillandale Farms by engaging in numerous mutually beneficial financial transactions with stolen Hillandale funds, such as the purchase of collectible vehicles, real estate, or excessive personal spending, or the operation of their businesses, and by transferring embezzled funds to companies controlled by WESTON and VP, primarily for the purpose of concealing the source of the stolen money, using financial accounts they each controlled, in the following manner:

## THE HILL-N-DALE TREE FARM-NO VERSAILLES BANK ACCOUNT

14. On or about October 26, 2005, shortly following his departure from Hillandale Farms, WESTON, as described above, created the fictitious Hill-n-Dale business checking account at Northwest Savings Bank for the purpose of depositing approximately $6.8 million dollars in embezzled funds. From this account, approximately $4.4 million dollars was used by WESTON for his personal benefit in operating his businesses, or in excessive spending. Approximately $2.3

million dollars from this account was also funneled by WESTON to a business and to personal accounts controlled by VP. More specifically, Weston conducted the following transactions:

a. between 2016 and 2018, WESTON transferred approximately $492,000 from the account to the operation and payroll accounts for Katie's Kandies maintained at Northwest Savings Bank;

b. on or about February 10, 2015, WESTON purchased a 2013 Honda Pilot automobile for $34,636;

c. on or about April 14, 2015, WESTON purchased a 2003 Lexus SC 430 convertible for $25,690;

d. on or about February 5, 2016, WESTON purchased a 2010 Lexus LX5 Sport utility vehicle for $21,523;

e. on or about November 9, 2017, WESTON purchased a Northwest Savings Bank cashier's check payable to "Lincoln AFS" for the payoff of an automobile loan in the amount of $26,716.68 from a previous purchase of a 2013 Lincoln MKZ sedan;

f. on or about December 27, 2018, WESTON purchased a condominium in the Gateway Towers building at 320 Fort Duquesne Boulevard for $187,000 that was deeded in the name of Cougar;

g. between 2010 and 2014, WESTON spent approximately $341,000, comprised of approximately $192,071 in funds from the Hill-n-Dale Tree Farm account, and approximately $147,155 in funds from an account at Cougar to purchase a self-service car wash on Rodi Road in Penn Hills, PA, named the Camanda Car Wash. Later, WESTON sold the car wash on June 5, 2019; and,

h. On September 11, 2019, WESTON used the proceeds from the sale of the Camanda Car Wash to purchase of a 2008 Aston Martin convertible for $39,600.

## COUGAR HOLDINGS, INC.

15. On or about January 3, 2008, WESTON created Cougar for the stated purpose in his LinkedIn profile, to "oversee operations of commercial and residential real estate holdings, including sale of timber and gas rights, rentals and leasing." On or about March 3, 2009, WESTON established a bank account for Cougar at Northwest Savings Bank, ending in account number 7544. WESTON was the only signatory to the account. WESTON transferred approximately $2.8 million of embezzled funds from the Hill-n-Dale Tree Farm Account into the Cougar bank account. He then used the funds transferred to the Cougar account to acquire real estate, to purchase and operate self-service car washes, and to funnel money to conspirator VP through her company White Oak Teletronics, more specifically, in the following ways:

   a. between 2010 and 2019, WESTON transferred approximately $1.865 million dollars from the Cougar account to PNC and S&T bank accounts owned by VP;

   b. on October 31, 2017, WESTON purchased a self-service car wash on Idlewild Road in Crafton, PA, called the "Crafton Car Wash" for $319,000;

   c. on or about March 7, 2018, WESTON funded an E*Trade brokerage account with $215,000 in funds from the Cougar account. From the E*Trade account, Weston then made frequent equity trades, and also transferred approximately $93,000 to the White Oak Teletronics account at S&T Bank; and

   d. on or about October 22, 2015, WESTON purchased a 2013 Lexus GX6 sport utility vehicle for $28,912.

16. In addition to the aforesaid financial transactions, WESTON frequently used withdrawals in the form of checks, direct debit transactions, and cash withdrawals from Cougar to support the operations of his car washes and businesses, and to finance WESTON's personal lifestyle which included personal credit card, utility, and college tuition payments for his children.

## WHITE OAK TELETRONICS

17. As stated above, VP owned a business located in White Oak, PA, called "White Oak Teletronics." A bank account associated with the business was maintained at S&T Bank, ending in account number 3057 (hereafter White Oak). According to Pennsylvania Department of State Records, the business was registered in 1991 with a stated business purpose to provide "telephone sales, service and vending." However, since 2013, VP also used the business to launder millions of dollars in embezzled funds to enrich herself, and in the purchase of collectible vehicles and sporting equipment, more specifically in the following ways:

a. between 2010 and 2019, VP received approximately $2.2 million dollars in embezzled money from WESTON. This amount was comprised of approximately $2.1 million transferred from WESTON to VP by checks payable to White Oak Teletronics from business accounts controlled by WESTON at Cougar, Katie's Kandies, and E*Trade;

b. approximately $199,000 was transferred from WESTON to VP from Cougar in checks made payable to VP; and

c. between 2013 and 2019, VP drafted personal checks totaling approximately $1.1 million dollars made payable either to herself which she then deposited into her personal checking account at S&T Bank.

## VP'S DISCOVER AND CAPITAL ONE CREDIT CARD ACCOUNTS

18. It was further a part of the conspiracy that VP held a Discover credit card, account number ending in 5824. Between January 2013 and July 2019, VP conducted multiple credit card purchases which totaled approximately $377,824 for personal expenses including purchases at Amazon, grocery stores and clothing retailers, among others. The payments for this card were drawn from the VP personal checking accounts at S&T and PNC Bank, which held commingled embezzled funds from Hillandale.

19. It was further a part of the conspiracy that VP held a Capital One Credit Card, account number ending in 4511. Between February 2016 and July 2019, VP conducted multiple credit card purchases which totaled approximately $384,000 for personal expenses including dining, entertainment, household furnishings, and travel to Florida, Indiana, Maryland, New York and Texas. The payments for this card were also drawn from the VP personal accounts at S&T and PNC bank accounts which held commingled funds.

20. Additionally, VP made the following purchases of vehicles and water sport equipment with embezzled funds held in her S&T account ending in 0056, including:

   a. on or about September 28, 2015, VP purchased a collectible 1933 Ford Model 40 Coupe from Classic Auto Showplace for $40,175. Title to the vehicle was placed in the name of person known to grand jury as JP;

   b on or about July 26, 2014, VP purchased a 2010 Bennington 2275RL Pontoon Boat and trailer for $31,844;

   c. on or about September 12, 2015, VP purchased a 2014 Yamaha VX Cruiser wave runner and trailer for $10,244; and

   d. on or about January 4, 2013, VP purchased a 2012 Morgan 3-Wheeler from a company called Europa Macchina for $45,046.88.

In violation of Title 18, United States Code, Section 1956(h).

## COUNTS THREE AND FOUR

The grand jury further charges:

That during the calendar years set forth below, the defendant, JONATHAN A. WESTON, in the Western District of Pennsylvania, had and received gross income in the respective calendar year amounts, and by reason of such gross income he was required by law, following the close of the calendar year, and on or before April 15th of the following year, to make an income tax return to the Director, Internal Revenue Service Center, at Philadelphia, or other proper officer of the United States, stating specifically the items of his gross income and any deductions and credits to which he was entitled; that well-knowing and believing all of the foregoing, he did willfully fail to make an income tax return to said Director of the Internal Revenue Service Center, or to any other proper officer of the United States, each such calendar year being a separate count herein:

| Count | Calendar Year | Gross Income |
|---|---|---|
| 3 | 2015 | $1,005,036 |
| 4 | 2018 | $527,055 |

In violation of Title 26, United States Code, Section 7203.

## COUNTS FIVE AND SIX

The grand jury further charges:

For the tax years set forth below, in the Western District of Pennsylvania, the defendant, JONATHAN A. WESTON, did make and subscribe to a federal income tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which was not true as to every material matter, to wit, the defendant, JONATHAN A. WESTON, willfully made and subscribed to a Form 1040 federal income tax return which materially underreported his total income, whereas, in truth and in fact, as the defendant then and there well knew, the statement of total income was false, each such false tax return being a separate count herein:

| Count | Tax Year | Falsely Reported Income |
|-------|----------|-------------------------|
| 5     | 2016     | $17,033                 |
| 6     | 2018     | $12,670                 |

In violation of Title 26, United States Code, Section 7206(1).

## CRIMINAL FORFEITURE ALLEGATIONS

1. The United States hereby gives notice to the defendant, JONATHAN A. WESTON, charged in Count One, that upon his conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which requires any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense, including but not limited to the following:

### MONEY JUDGEMENT

A sum of money equal to at least $6.8 million in United States currency.

### SPECIFIC PROPERTY

#### Real Property

a) one condominium located at 320 Fort Duquesne Boulevard, Unit 16G, Pittsburgh, Pennsylvania 15222, purchased on December 27, 2018 and deeded in the name of Cougar Holdings, Inc.

#### Vehicles

b) one 1933 Ford Model 40 coupe with VIN CET4132;

c) one 2008 Aston Martin Vantage Convertible with VIN SCFBF04B18GD08322;

d) one 2013 Morgan 3-Wheeler with VIN SA9M32852CP202501;

e) one 2013 Lexus GX6 sport utility vehicle with VIN JTJBM7FX9D5057569.

#### Financial Accounts

f) one E-Trade brokerage account ending in 5303 owned by Jonathan A. Weston containing approximately $1,952.54 in securities and/or cash;

g) one Northwest Savings Bank checking account ending in account number 7544 in the name of Cougar Holdings Inc. containing approximately $7,287.97;

h) one Northwest Savings Bank checking account ending in account number 4139 in the name of Jonathan A. Weston containing approximately $8,753.32;

i) one Northwest Savings Bank checking account ending in account number 0177 in the name of Jonathan A. Weston or Erin Weston containing approximately $14,994;

j) one S&T Bank checking account ending in account number 0056 in the name of Victoria Petrulis containing approximately $4,706.10;

k) one S&T Bank checking account ending in account number 0057 in the name of White Oak Teletronics containing approximately $18,294.65.

l) one PNC Bank checking account ending in account number 2382 in the name of Victoria Petrulis containing approximately $153,766.91.

2. The United States hereby gives notice to the defendant, JONATHAN A. WESTON, as charged in Count Two, that upon his conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the property set forth above in paragraphs (a) through (l).

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in these forfeiture allegations, specifically, but not limited to:

**Substitute Assets**

One 2016 Porsche Macan Sport Utility vehicle, VIN WP1AB2A5XGLB42691.

A True Bill,

_____
Foreperson

_____
STEPHEN R. KAUFMAN
Acting United States Attorney
PA ID No. 42108